UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ADVANCE FINANCIAL RESOURCES, INC.,                                    CV 08-1084-KI

               Plaintiff,                                    OPINION AND ORDER

     v.

COTTAGE HEALTH SYSTEM, INC.,

               Defendant.

_____

KING, Judge:

      Plaintiff Advance Financial Resources Inc. ("Advance") filed this diversity action against

Defendant Cottage Health System ("Cottage Health"), alleging breach of contract.  Before the

court is Cottage Health's Motion (doc. 4) to Dismiss pursuant to Federal Rules of Civil

Procedure 12(b)(2) and 12(b)(3) for lack of personal jurisdiction and improper venue.  Oral

PAGE 1 - OPINION AND ORDER

argument is not necessary to resolve this motion.  For the reasons set forth below, the motion to

dismiss for lack of personal jurisdiction is GRANTED.

## I. Background

Cottage Health is a California-based non-profit corporation that operates three "not for

profit" hospitals/medical facilities in Santa Barbara County, California, which is in the Central

District of California.  It does not provide any medical services or conduct any business in

Oregon.  It has no offices or employees in Oregon, and does not advertise or solicit business in

Oregon.  All of the medical services provided by Cottage Health are done so in California, and

none of Cottage Health's patients reside in Oregon.

Advance is an Oregon-based corporation that provides medical financing for various

healthcare providers and facilities, including hospitals.  In general, these healthcare providers

will regularly enter into revolving, open-end credit contracts with some of their respective

patients for the purpose of providing healthcare services to those patients.  Advance is in the

business of purchasing these contracts from the healthcare providers for the amount owed by the

patient, less a fee.  Advance then attempts to collect the unpaid balances owed by the patients.

Advance entered into extensive negotiations for the purchase of similar patient credit

contracts from Cottage Health.  Advance initiated the negotiations by presenting Cottage Health

with an example that contained the terms Advance typically included in such contracts.  The

parties subsequently contacted each other on numerous occasions via telephone, email, and

facsimile to negotiate and renegotiate the terms of the contract.  No representatives of Cottage

Health traveled to Oregon to negotiate any part of the contract.  Advance acknowledges,

however, that its representatives traveled to Santa Barbara in February 2005, to discuss the

PAGE 2 - OPINION AND ORDER

contract.  All of the Cottage Health employees involved in the negotiation and administration of the contract reside in California.

Cottage Health ultimately entered into a contract ("the Contract") with Advance on or about April 21, 2003.  The Contract explained that each of Cottage Health's respective medical facilities regularly enter into open-end credit contracts with patients for the purpose of financing and providing medical care.  Under the Contract, Advance agreed to purchase these contracts from Cottage Health's respective medical facilities for 92% of the total amount owed by the patients.[1]  Advance, in turn, received the right to collect those outstanding balances.  If Cottage Health or any of its medical facilities received payments on any of those patient accounts, it was required to forward the payments to Advance in Oregon.  The Contract provides that the parties' rights and obligations under the contract "shall be determined under, governed by and construed in accordance with the internal laws of the State of California . . ."  Decl. of Montalban in Supp. of Pl.'s Resp., Ex. B, at 6, ¶ 19.[2]  Cottage Health also designated Advance as its agent and attorney-in-fact, "with the full power . . . to assign and transfer [patient] Contracts and  to endorse any check, money order or other evidence of payment under the Contract."  Id. at ¶ 2.

All of Cottage Health's obligations under the contract were to be performed in Santa Barbara, where all of its employees, patients, and financial records are located.  Meanwhile, most of the work performed by Advance was done so in Oregon.  Advance contacted Cottage Health's

---

[1]Each of the accounts purchased by Advance were contracts that Cottage Health entered into with its patients in Santa Barbara based on medical services that Cottage Health provided in Santa Barbara.  None of the patients live in Oregon.

[2]Schedule A to the Contract further provides, the "late payment fee on all Contracts shall comply with the amount permitted under California law."  Decl. of Shelia Souther in Supp. of Def.'s Mot. to Dismiss, Ex. A, at 10.

patients from Oregon to attempt to procure payments.  Advance then deposited patient payments into an Oregon bank, and later wired money from that bank to Cottage Health.

This dispute arose when Cottage Health allegedly refused to honor its obligation under the Contract to repurchase all of the patient accounts upon Advance's demand.  On September 17, 2008, Advance filed this action for breach of contract, invoking this court's diversity jurisdiction under 28 U.S.C. § 1332.  On November 5, 2008, Cottage Health filed the present motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(2) and (3), for lack of personal jurisdiction and improper venue.  On March 16, 2009, Advance filed an almost identical claim in the United States District Court for the Central District of California, where Cottage Health resides.

## II. Discussion

The plaintiff bears the burden of establishing that the court has personal jurisdiction over the defendant.  Harris Rutsky & Co. Insurance Services, Inc. v. Bell & Clements, 328 F.3d 1122, 1129 (9th Cir. 2003).  If no evidentiary hearing is held, a plaintiff can withstand a motion to dismiss by making a *prima facie* showing of jurisdictional facts which, if true, support jurisdiction.  Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004).  The court must accept the allegations in the Complaint as true, and must resolve any conflicts between the factual allegations contained in the parties' affidavits in favor of the plaintiff.  Id.

To establish personal jurisdiction over a nonresident defendant, the plaintiff must show that forums state's jurisdictional statute confers personal jurisdiction and that the exercise of jurisdiction comports with federal constitutional principles of due process.  Fed. Deposit Ins. Corp. v. British-Am. Ins. Co. ("FDIC"), 828 F.2d 1429, 1442 (9th Cir. 1987).  Because Oregon's

PAGE 4 - OPINION AND ORDER

long-arm jurisdictional statute is coextensive with federal due process requirements, Or. R. Civ.

P. 4(L), the jurisdictional analyses under Oregon and federal law are the same.  Yahoo! Inc. v. La

Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006).  Due

process requires that a nonresident defendant has minimum contacts with the forum state such

that the exercise of personal jurisdiction does not offend "traditional notions of fair play and

substantial justice."  International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

The constitutional due process test may be satisfied by a finding of either general or

specific jurisdiction.  General jurisdiction exists where a defendant has "substantial" or

"continuous and systematic" contacts with the forum state.  Bancroft & Masters, Inc. v. Augusta

National, Inc., 223 F.3d 1082, 1086 (9th Cir. 2000).  The standard is "fairly high" and requires

that the defendant's contacts be of the sort that approximate physical presence.  Id.  Advance

does not contend that Cottage Health has the kind of "systematic and continuous" contacts with

Oregon that would justify exercising general jurisdiction.  The issue, therefore, is whether this

court has  specific jurisdiction over Cottage Health based on its forum-related contacts or

activities.

The Ninth Circuit has established a three-part test for analyzing whether specific

jurisdiction exists:

> (1) the non-resident defendant must purposefully direct his activities or
> consummate some transaction with the forum or resident thereof; or perform some
> act by which he purposefully avails himself of the privilege of conducting
> activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-
> related contacts; and (3) the exercise of jurisdiction must comport with fair play
> and substantial justice, *i.e.* it must be reasonable.

Schwarzenegger, 374 F.3d at 802 (internal quotation omitted).  The plaintiff bears the burden of

satisfying the first two prongs of the test. <u>Id</u>. If the plaintiff fails to satisfy either of those prongs, there is no personal jurisdiction in the forum state. <u>Id</u>. On the other hand, if the plaintiff satisfies both of the first two prongs, the burden shifts to the defendant to present a "compelling case" that the exercise of jurisdiction would not be reasonable. <u>Id</u>.

## A. Purposeful Availment

Under the first prong of the three-part specific jurisdiction test, Advance must establish that Cottage Health "purposefully availed" itself of the privilege of conducting activities within Oregon, thus invoking the benefits and protections of its laws. <u>Schwarzenegger</u>, 374 F.3d at 802 (<u>citing</u> <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958)). The Ninth Circuit has explained:

> Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff. In order to have purposely availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.

<u>Roth v. Garcia Marquez</u>, 942 F2d 617, 621 (9th Cir. 1991). The focus upon the defendant's affirmative conduct "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous or attenuated contacts, or of the unilateral activity of another party or a third person." <u>Burger King v. Rudzewicz</u>, 471 U.S. 462, 475 (1985) (citations and internal quotations omitted); <u>see also</u> <u>Hanson</u>, 357 U.S. at 253 ("The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State.").

The court has specific jurisdiction, for example, where the defendant "deliberately has engaged in significant activities within a state," or has "created continuing obligations between himself and residents of the forum." <u>Burger King</u>, 471 U.S. at 475; <u>see also</u> <u>Sinatra v. Nat'l</u>

<u>Inquirer</u>, 854 F.2d 1191, 1195 (9th Cir. 1988) ("the solicitation of business in the forum state that results in business being transacted or contract negotiations will probably be considered purposeful availment"); <u>Schwarzenegger</u>, 374 F.3d at 802 (Purposeful availment "typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there."). By taking such actions, the defendant's "activities are shielded by the benefits and protections of the forum's laws," and it is therefore "presumptively not unreasonable to require him to submit to the burdens of litigation in that forum." <u>Burger King</u>, 471 U.S. at 475.

Applying these principles to the present case, I find that Advance has failed to establish that Cottage Health purposefully availed itself of the privileges of benefits of conducting business in Oregon. Cottage Health does not do any business or provide any medical services in Oregon. It does not market, solicit, or advertise its business in Oregon. None of Cottage Health's patients reside in Oregon and there is no evidence that Cottage Health deliberately engaged in any activities in Oregon. Cottage Health simply does not have sufficient contacts with Oregon to support the finding that it purposefully avails itself of the privileges and benefits of Oregon law.

The fact that Cottage Health executed a contract with a company that happens to be an Oregon resident is not sufficient to establish purposeful availment. <u>Burger King</u>, 471 U.S. at 478-79. Something more is required, and the Supreme Court has instructed courts to consider the parties' "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" in determining whether the defendant purposefully availed itself of the benefits and protections of the forum. <u>Id</u>. at 479. In this case, Advance, not Cottage Health, initiated contract discussions. There is no evidence that Cottage

Health sought out Advance's services in Oregon, or benefitted from the fact that Advance happens to reside in Oregon. During negotiations, Advance's representatives traveled to California to discuss the Contract, but Cottage Health's representatives never traveled to Oregon. Moreover, the subject of the Contract arises entirely out of services performed, and debts owed in California. Each of the contracts purchased by Advance were based on medical services provided by Cottage Health in California, and all of Cottage Health's obligations under the Contract (*e.g.*, offering its patients the opportunity to use Advance's credit services) were to be performed in California. These factors weigh against a finding that Cottage Health purposefully availed itself of Oregon law.

Additionally, the fact that Advance and Cottage Health expressly agreed that California law governed the Contract "is an important factor" in determining whether Cottage Health "purposely availed" itself of the benefits and protections of Oregon law. Wessels, Arnold & Henderson v. Nat'l Md. Waste, Inc., 65 F.3d 1427, 1434 (8th Cir. 1995); see also Jones v. Petty-Ray Geophysical, Geosource, Inc., 954 F.2d 1061, 1069 (5th Cir. 1992) (noting that forum-selection and choice of law clauses "indicate rather forcefully" that a defendant "did not purposely direct its activities toward" the forum). If Cottage Health intended to avail itself of the protections of Oregon law, it presumably would not have negotiated to include the California choice-of-law provision in the Contract. That Cottage Health specifically sought the application of California strongly indicates that it did not purposely avail itself of Oregon law.

Contrary to Advance's argument, Cottage Health's use of mail, telephone, facsimile to communicate with Advance in Oregon does not qualify as purposeful activity invoking the benefits and protection of Oregon law. Roth v. Garcia Marquez, 942 F.2d 617, 622 (9th Cir.

PAGE 8 - OPINION AND ORDER

1991).  Similarly, the fact that Advance carried out its obligations under the Contract in Oregon,

and wired money to Cottage Health from an Oregon bank does not constitute evidence of Cottage

Health's affirmative invocation of the privilege and benefit of doing business in Oregon. FDIC,

828 F.2d at 1443; see also Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408,

416-17 (1984) ("[T]he bank on which a check is drawn is generally of little consequence to the

payee and is a matter left to the discretion of the drawer. Such unilateral activity of another party

or a third person is not an appropriate consideration when determining whether a defendant has

sufficient contacts with a forum State to justify an assertion of jurisdiction.").  Such contacts and

communications are the result of Advance's unilateral activity and the fact that it happens to be a

resident of Oregon, rather than any affirmative conduct on the part of Cottage Health.

Accordingly, I find that Cottage Health's contact with Oregon, which is based entirely on the

execution of a single contract with an Oregon resident, is simply too limited and attenuated to

show that it purposeful availed itself of the benefits and privileges of doing business in Oregon.

        Finally, I am not persuaded that Cottage Health purposefully availed itself of the benefits

of Oregon law simply by designating Advance as it's attorney-in-fact with the power collect

debts owed under the Contract.  The Ninth Circuit's rejection of a similar argument in Davis v.

American Family Mutual Insurance Company, 861 F.2d 1159 (9th Cir. 1988), supports this

conclusion.  In Davis, the plaintiff argued that the insurer had subjected itself to specific

jurisdiction in Montana by hiring an agent in the state to adjust a claim involving a North Dakota

resident, and sending mail to that agent regarding the claim.  Id. at 1162.  The Ninth Circuit

rejected this argument, holding that the act of hiring an agent who happened to live in Montana

to adjust a claim that arose out of North Dakota was insufficient to demonstrate purposeful

PAGE 9 - OPINION AND ORDER

availment of Montana law.  Id.

Like Davis, the subject of the Contract in this case relates solely to interests outside of the State of Oregon (*i.e.*, the collection of debts owed by primarily California residents to California hospitals).  In addition, the Contract was initiated by Advance, negotiated in California, is governed by California law, and requires no performance by Cottage Health in the forum state. In light of these factors, the fact that Advance happens to collect the outstanding debts from its place of business in Oregon is not sufficient to demonstrate that Cottage Health purposefully availed itself of the privileges and benefits of Oregon law.

Because Advance fails to demonstrate that Cottage Health purposefully availed itself of the privilege of doing business in Oregon, this court lacks personal jurisdiction over Advance's claim against Cottage Health. Schwarzenegger, 374 F.3d at 802. Accordingly, I need not address whether Advance's claim arose from Cottage Health's forum-related activities or whether the exercise of jurisdiction would be reasonable.  Id.; McGlinchy v. Shell Chem. Co., 845 F.2d 802, 817-18 (9th Cir. 1988).  Nevertheless, an examination of these additional factors demonstrates that this court's exercise of jurisdiction over Cottage Health would be unreasonable.

## B. Reasonableness

Even if I were persuaded that Cottage Health purposefully availed itself of the privilege of doing business in Oregon (which I am not), Cottage Health has presented a "compelling case" that this court's exercise of specific jurisdiction would be unreasonable.  Burger King, 471 U.S. at 477.  The Ninth Circuit has identified seven factors that are relevant to the determination of the reasonableness of the exercise of jurisdiction:

(1) the extent of purposeful interjection into the forum state;

(2) the burden on the defendant of defending in the forum;

(3) the extent of conflict with the sovereignty of the defendant's state;

(4) the forum state's interest in adjudicating the dispute;

(5) the most efficient judicial resolution of the controversy;

(6) the importance of the forum to the plaintiff's interest  in convenient and

effective relief; and

(7) the existence of an alternative forum.

Mattel, Inc. v. Greiner and Hausser GmbH, 354 F.3d 857, 866-67 (9th Cir. 2003).  No factor is

dispositive, and the court must balance all seven.  Id.

The "purposeful interjection" analysis is analogous to the purposeful availment analysis

discussed above.  Sinatra, 854 F.2d at 1199.  As noted, Cottage Health's purposeful interjection

into Oregon has been minimal.  That Cottage Health entered into a contract with Advance "is not

sufficient to establish purposeful interjection into a forum state."  Fed. Deposit Ins. Corp. v.

British-Am. Ins. Co., 828 F.2d 1439, 1443 (9th Cir. 1987).  Moreover, Cottage Health does not

do business in Oregon, and does not solicit business in Oregon.  No one from Cottage Health

ever traveled to Oregon to negotiate the Contract, the subject of the Contract (i.e., the patient

accounts) are in California, the governing law is California, and all of Cottage Health's

obligations under the Contract were to be performed in California.  Thus, this factor weighs

against finding that the exercise of jurisdiction would be reasonable.

The second factor also weighs against finding personal jurisdiction.  Although each party

would undoubtedly find it less burdensome to litigate in the forum in which it resides, the

primary concern in the law of personal jurisdiction is the defendant's burden.  FDIC, 828 F.2d at

PAGE 11 - OPINION AND ORDER

1444.  In this case, it would be significantly more burdensome for Cottage Health to secure the testimony of third-party witnesses in Oregon than it would be for Advance to litigate in California.  In addition, I note that Advance has filed an almost identical suit in the Central District of California, which is where Cottage Health resides.  This suggests that litigating in that forum would not present a significant burden for Advance.

The third factor weighs in favor of exercising jurisdiction because there is no evidence that this court's exercise of jurisdiction would create a conflict with the sovereignty of the State of California.

The fourth factor tilts in slightly favor of Cottage Health and against finding the exercise of jurisdiction reasonable because Oregon's interest in adjudicating this dispute is not particularly great.  If Oregon law governed the dispute, Oregon would have a substantial interest in adjudicating Advance's claim.  FDIC, 828 F.2d at 1444.  The Contract, however, specifies that the parties' rights and obligations "shall be determined under, governed by and construed in accordance with the internal laws of the State of California . . ."  Decl. of Montalban in Supp. of Pl.'s Resp., Ex. B, at 6, ¶ 19.  Additionally, none of the patients who entered into these financing agreements reside in Oregon and Cottage Health never solicited or advertised its business in Oregon.

The fifth weighs in favor of Cottage Health and against the reasonableness of exercising jurisdiction.  California appears to be the most efficient forum to resolve the dispute because the parties' rights and obligations under the contract are to be "determined under, governed by and construed in accordance with the internal laws of the State of California."  Decl. of Montalban in Supp. of Pl.'s Resp., Ex. B, at 6, ¶ 19.  Further, all of the potential third-party witnesses reside in

California.  Finally, because Cottage Health has no assets in Oregon, additional litigation in California would be required in order for Advance to collect any judgment.

The sixth factor slightly favors Advance because it would presumably be more convenient for it to litigate in Oregon than in California.

Finally, the seventh factor again favors Cottage Health and indicates that the exercise of jurisdiction in Oregon would be unreasonable.  Advance bears the burden of proving the unavailability of an alternative forum.  Amoco Egypt Oil Co. v. Leonis Nav. Co., Inc., 1 F.3d 848, 853 (9th Cir. 1993).  Although Oregon would certainly be more convenient, Advance does not seriously contend that jurisdiction would be improper in California, or that its claim would be precluded in that forum.  Indeed, Advance recently filed an almost identical Complaint in the Central District of California.  Accordingly, I find that this factor weighs in favor of Cottage Health and against the exercise of jurisdiction.

Weighing all of the factors, I find that it would be unreasonable to require Cottage Health to defend this claim in Oregon, given its limited contacts with the forum, and the parties' express agreement that California law would govern the interpretation of the Contract.  Because Cottage Health's expectations and burdens should be weighed more heavily than the Plaintiff's hardships, FDIC, 828 F2d at 1445, I  find that Advance has not met its burden of establishing that this court has personal jurisdiction over Cottage Health.

///

///

///

PAGE 13 - OPINION AND ORDER

### III. Conclusion

For the reasons set forth above, Cottage Health's Motion to Dismiss for Lack of Personal

Jurisdiction (doc. 4) is GRANTED.

IT IS SO ORDERED.

DATED this _____20th_____ day of April, 2009.


_____/s/ Garr M. King_____
                         Garr M. King
            United States District Court Judge

PAGE 14 - OPINION AND ORDER